The next case today is case number 4090517, People v. George D. For the appellant, we have Cynthia Tracy. And for the appellee, Timothy Londrigan. I want to advise counsel, Justice Steigman, who is on the panel for this matter, could not be here today. However, he will listen to the tapes of the oral arguments. Obviously, he has access to the file, to the briefs, and to all the other matters that pertain to the file. And he will take part in the decision. But Justice is not able to be here today. Having said that, Ms. Tracy. May it please the court that George D. was a patient at McFarland in July of 2009. When Dr. Horstman asked him if he would take certain medications. She had already prescribed two, what she called emergency medications. But when they started discussing other medications, she offered some medications to him. We're not really sure what she offered him at that time. But at any rate, he refused to take them. And as a result of that, she filed the petition that was heard in July. And after that, the trial court ordered him to be forcibly medicated at McFarland. Now, Dr. Horstman had been assigned to treat Mr. D. But it doesn't seem like she really spent much time with him. Or that she really tried to resolve the impasse that they had reached in their relationship. And so I think we need to look at Mr. D. and how he came to that decision. Because I think at the heart of this case is that because this was a petition to forcibly medicate him, then all the elements of Section 2-107.1 of the Code had to be proved by clear and convincing evidence. And at the heart of this case he submits is that he had capacity to make that decision to refuse medications. Any merit to the mootness argument? Pardon me? Any merit to the mootness argument? I think he meets the exceptions to mootness. Because first of all, the order was a 90-day order as is allowed by that statute. And that expired in October. And then the second part of the capable of repetition exception would be that he could be subjected to the same action again. I'm not sure that argument follows what you just previously indicated, which that you were challenging the sufficiency of the evidence. So if you're challenging the sufficiency of the evidence, it's kind of sui generis in that any subsequent proceeding is going to be new evidence. But it's from a different perspective because each element has to be proved by clear and convincing evidence. But he still believes that it's a matter of statutory compliance to meet not only that part of the statute, but also everything else that comes with it. 2107.1 is a very complicated, well not really complicated, but it's both procedural and directive and it also includes the clear and convincing part. But I think it's more than just an evidentiary issue. I think it's also, there's a component of statutory compliance and I think that's what would take it out of, that's what would make that exception apply. Both of you referred to Alfred H. H. Who does Alfred H. help? Well, I think, I think Alfred H. H. defines the current state of mootness and when the exceptions apply. So I think if the court did only consider it, if the court did only consider it, I don't think it would apply. If it was a purely evidentiary like you inquired about, then I think Alfred H. H. would help the state. But I think from our perspective, I think as Alfred H. H. defines lateral consequences, that, that exception could apply. Because even after he left McFarland, he remained adamant about their impasse. That he had ADHD, that she refused to listen and she refused to get them past that treatment. You know, maybe the diagnosis didn't matter as much as the course of treatment. And he tried to blend the course of treatment regardless of what she called it and she just flat out refused. So I think based on what happened, if he ever ended up or ends up back at McFarland, I think they could arrive in that same square again and I think it would be, could be the same action again. And if the court would look to Suzette D., which I cited in my brief, I think that explains that same action, how that would then help the exception to apply. Are you talking about the collateral consequences exception? Well, that's, that's the other exception that I, I think would apply. No, I'm trying to follow you here. The case you just mentioned, you said Suzette, correct? Yes. Suzette D.? Yes. Does that case stand for the proposition that we should consider this to be an exception to mootness under collateral consequences? It's the capable of repetition that I was talking about. Okay, thank you. I just had to check to be sure, but that's correct. And then as far as collateral consequences are concerned, there's no evidence in this record that he had ever been subjected to this type of proceeding before. So, but, if this order stands, then, then that could affect him in the future. So for those reasons, then he would submit that collateral consequences would also apply. And, and he, he does strongly submit that those exceptions to mootness apply. Does it matter that he admitted to being previously forced to take subpoenas? Or psychotropic medications? I don't think he said he was forced to take them. I think he's, well, at McFarland, do you mean at McFarland or do you mean other? Well, both. Or either. I don't think so, because I, I think what the mootness exception applies to is an actual court order where they're, they're forced to take them. At least that's how I interpret it. I, I think, I think if someone's been in the hospital, I think if they've had experience with medications, I don't think that defeats an exception to mootness. He submits that the heart of this case, if, presuming that we get past the mootness issue, is that the state failed to prove that he had capacity to, to refuse medications. I don't think all the doctor needed to do was just, just listen to him for a few minutes, even, to consider what, if he, if she wouldn't listen to him say it, she had read his chart. And in there it stated he had a lifelong, and he said it at the hearing, he had a lifelong struggle with ADHD. He had taken some of the medications, he had side effects that he thought were significant and that affected him and he still was affected by his condition. And he wanted help to deal with it. But things, when he had tried different psychotropic medications in the past, in fact he had tried Trileptal and Zyprexa and Thorazine and none of them helped him without producing serious side effects. So that was why he refused the medications. Now the doctor thought he didn't have capacity, mainly because he disagreed with her about the diagnosis. And secondly, she just said he just doesn't understand the medications. But if you look at the record, he had the written information about the medications, he had studied them. And I think what he's asking the court to do is travel back to when NRECE came out. And granted today there's many more medications, I mean you can conclude that simply from the petition. There's nine medications that he's been asked to take, if you include Benadryl which was just to deal with the side effects. But when NRECE came out, that was the first case that really dealt with medications. And the court went into a long commentary about, even though some arguments were accepted, some were rejected, still the court at that time recognized that individuals have a liberty interest in refusing medications. These very serious medications, and the court went into a long commentary about how truly serious these medications are. And cited the side effects that Mr. D himself was very concerned with, tardive dyskinesia, neuroleptic malignant syndrome, even death. Seizures, those, he was, he's 44 years old, but he had dealt with these medications. These medications and others throughout his life, and he truly was concerned about the side effects. And I think that he made an informed decision. It wasn't just that the doctor was requesting them and he was going to refuse for no reason. I think he truly understood the medications, I think he made a reasoned, informed decision to refuse them. And she just would not work with him. He even made a proposal for Adderall, which would have dealt with his ADHD, and the doctor said at that time she considered him manic. Well, she kind of contradicted herself when she talked about the manic part of his symptoms. But the Adderall would have addressed not only his ADHD, but at one point she even said that that or another stimulant would address the manic part of his symptoms. But yet she still refused to even try that with him. So essentially, for those reasons, he asked the court to consider that he did have capacity, and I think that that was a serious deficiency. And the state's compliance with 2-107.1. Also, there was some reference, I think, somewhat in dispute about whether or not he was threatening that particular prong of 2-107.1. It would seem that since this is a hearing at McFarland, the doctor is there testifying, who knows, staff was, whoever would have observed what she might have categorized as threatening, could have come in to testify. But really, all she could say was that, the doctor, was that she was assigned to his case on June 30th. And that on one day, I think it was the second, anyway, the extent of what she actually heard was him shouting. She never saw any threatening events. In fact, he had never, ever heard anyone. And so I think also that the state failed in complying with that particular provision of 2-107.1. And also, I think, if I might trace back to the capacity issue for just a moment, I think that the state's compliance with 2-107.1 was not good. The main roadmap for capacity still is Israel, and I think component by component, I think that even by that standard, that he knew and understood and made an informed decision and had capacity to do so. So on those grounds then, he respectfully asked the court to find that there are exceptions to mootness so that this case can proceed to a decision on appeal and that the trial court's forced medications order be reversed. Thank you. Good morning, Your Honors. May I please report? Counsel? It's the state's position, Your Honors, that this matter is moot. It should not be entertained by the court, because I'm sure the court is aware that the general rule in this instance is that the court does not issue opinions unless those opinions are likely to have some consequence on the resulting judgment. In this instance, the judgment has already been followed through, and there's no way that any decision of this court now would have any effect on the order to involuntarily admit or treat this patient with drugs. In response to that, the respondent has raised exceptions to the mootness doctrine, two of them, the first being capable of repetition. And we agree that the first prong of that test applies, that there is insufficient time for the court to have reviewed this prior to the expiration of the order. However, the second prong of that test is one that's important for us today, and that is that there must be a reasonable expectation that the same complaining party would be subject to the same action again. That's a quote from the Supreme Court in Alfred H.H., and the key language in that quotation is the definition of the term, same action. This court actually entertained Alfred H.H. before it was taken up by the Supreme Court, and accurately, I think, defined the term, same action, and this court's definition of that term was adopted by the Supreme Court. The Supreme Court twice identifies what it means by the term, same action. It means that the action must have a substantial enough relation that the resolution of the issue in the present case would be likely to affect a future case involving responding. Now, in Alfred H.H., the issue was involuntary commitment. Again, the question before the court was a factual one, not one of statutory interpretation. And the court determined that there could be no benefit, no repeat of the same action in the future concerning this gentleman. In other words, a determination whether or not the factual elements met the burden of proof would have no bearing on a similar action of involuntary commitment, because the facts would be different. You would not be allowed to, nor would the earlier determination be relevant to a future determination of whether or not a voluntary commitment was met at that future action. A little complicated, but the same issue applies here in whether or not to admit or order involuntary medication. The question is one of fact. The court is required to look at the factual situation. Does the respondent suffer from a mental illness? Does he lack capacity to understand? And would the medication assist him in removing some danger or some instability? So it is impossible for this court now, regardless of what it determines, to have any impact on a future case. So the respondent cannot meet the second prong of that test, cannot suggest that they would be subject to a similar action where the decision of this court this morning would have any bearing on that future action. So I suggest that the same action capable of repetition, exception to the mootness doctrine, does not exist for the same reasons expressed by this court and the Supreme Court now for the H.H. So that leaves only one exception, additional exception to the mootness doctrine, which has been raised by the respondent in this instance, and that's collateral consequences. Collateral consequences raises perhaps a little bit more difficult question for us to resolve this morning. Initially, I think it has to be determined whether or not collateral consequences even exist. That's what the Supreme Court addressed in Alfred H.H. They didn't resolve that question because they determined that collateral consequences exist. They determined that regardless of whether collateral consequences could be assumed or whether they had to be proven by the moving party, they didn't exist in that case because the respondent had previously been involuntarily committed on several occasions, plus he had been convicted of a felony and sentenced to a term of imprisonment. So the court determined, well, whatever collateral consequences could possibly be established associated with his involuntary commitment judgment would be moot because, I mean, they couldn't attach because of his previous history, previous incarcerations, and previous... Who has the burden of showing whether collateral consequences exist? The Supreme Court didn't address that, Judge. They politely sidestepped that issue, but it's the State's position that it should be the respondent. It's always the respondent's burden in any civil litigation, and this is a quasi-civil proceeding. And I think this case presents a good example of why that burden should be placed on the respondent, and that is, what collateral consequences is the respondent suggesting he will suffer as a result of this adjudication? It's quasi-civil, but it involves a liberty interest, correct? It does involve a liberty interest, Judge, but I don't think that was the criteria that the court used in determining whether to infer collateral consequences from a criminal judgment. Well, if it's as clear as you're suggesting, why do you suppose the Supreme Court would have sidestepped it using your reasoning? Well, I think they did so because they found it wasn't right. It wasn't an issue that was before them. Actually, I think they could have offered at least some dicta on the subject, but they determined that because the facts of that case clearly demonstrated that collateral consequences did not exist, that further inquiry by them was unnecessary. So they reserved that determination. They specifically identified that problem and determined that they were not going to address it because the facts did not require them to do so. So it's important in the sense that they did identify that. I don't know what more, though, that decision can add to clarify that. In a criminal case, collateral consequences would attach because of the stigmatism that's associated with a criminal conviction. I don't think that same stigmatism attaches to an involuntary commitment proceeding or ordering involuntary administration of drugs. I mean, to try to equate a diagnosis of mental illness with a conviction for a felony I think are an opposite. A felony, obviously, is a result of bad decisions, bad behavior, bad character on the part of that defendant. Whereas a diagnosis of mental illness is simply a medical condition that unfortunately the respondent suffers from. It doesn't suggest or convey any negative stigmatism to the state's point of view. On the contrary, I think any negative stigmatism that's associated with a diagnosis of mental illness is a result of a medical condition. A diagnosis of mental illness would be more of an indication of the limited bias or prejudice of someone making that assumption. An individual who suffers from mental illness is no different than an individual that suffers from any other physical ailment. That's not something that they choose. It's not something that they have elected to do. They're suffering with something that's beyond their ability to control. It would be similar to a doctor diagnosing somebody with a heart condition and as a result of that heart condition the person loses their driver's license. If they become a danger to others, yes, then that condition I think should be considered. And I guess where I'm going with this is the Supreme Court did determine that collateral consequences apply to mental health proceedings. And I think that I don't fully appreciate that or understand that. The court suggested that if a respondent successfully attacked a judgment of involuntary commitment, that perhaps emotional inlimity could be one wherein the prior hospitalization stay would be inadmissible. But why is the prior hospitalization stay of concern to a future proceeding at all? In this instance, this gentleman, the record suggests he had been treated for mental illness in the past. It suggests that he had received medications for mental illness in the past. Now the record is silent as to whether or not those treatments were as a result of an involuntary commitment. Is the record silent as to whether they were ever forced? Correct. Whether the medications were forced or the treatment was as a result of involuntary commitment. The question wasn't asked, unfortunately. And I think it's important why the question wasn't asked, because no one at that proceeding thought that question was relevant. And I don't today believe that question to be relevant, because I don't think that previous proceedings and adjudications on those issues have any relation or bearing on the court's determination of similar questions in the future. The only question that would remotely, I think, apply is whether or not the respondent suffered from a mental illness. And perhaps you could rely upon a prior adjudication of involuntary commitment to establish that at one time the respondent did suffer from a mental condition. So the respondent never admitted to being forced to take psychotropic medications? The respondent admitted that he had taken psychotropic medication for mental illness. He did not suggest in his testimony whether or not he had been ordered to do so. Nor did the State ask that of the treating psychiatrist. And again, I think that's why the burden ought to be on the respondent. If the respondent wishes to create an exception to the mootness doctrine, I think it is incumbent upon the respondent to establish that some collateral consequence is going to result from this matter, which creates the exception. So they ought to ask whether or not, and the burden ought to be placed upon the respondent to ask, have you been previously subject to an order of involuntary medication? Have you previously been involuntarily committed? And then follow up with some suggestion as to how a similar, or how that particular adjudication is going to affect them in the future. The examples, quite frankly, offered by the Supreme Court I just don't think have application. The Court also suggests that the respondent may be prohibited from obtaining a license I think as an optometrist, as an example of a future consequence. And again, I don't really see that as a collateral consequence. Well, of course you understand, even if we agree with you, there's nothing we can do about it. Well, yes and no. I mean, what we could do is we could require the respondent to explain, to go through a factual... No, I mean, there's nothing we can do about what the Supreme Court has said. Exactly. But what I'm suggesting, Judge, I have a hard time understanding where the Court's going with that, but accepting that the Court's concerned that that's a legitimate collateral consequence. I think we need to get these facts in the record instead of guessing as to what potential collateral consequence could exist and how that adjudication could possibly affect this respondent in the future. I'm just curious, how do you think that could ever be placed into the record other than just argument by counsel? I mean, what kind of evidence would be required to show collateral consequences? Well, I think Respondent's Counsel could ask the respondent if they have ever applied for a license or intended to apply for a license of some kind that might be denied as a result of an adjudication. Counsel could inquire of the respondent as to... What was the first problem I'm trying to recall in the Supreme Court? Well, I just don't know where they were going with that on the hospitalization one, because I just don't find prior hospitalizations at all relevant to future determinations on these issues. But if the respondent is going to be arguing that he or she is suffering a collateral consequence as a result of this adjudication, I think they should be required to suggest what that might be, even if it's only through argument. It at least gives the State the opportunity to address what the respondent is referring to or talking about. You know, right now we have this vague concept set out there. Quite honestly, I agree with this Court and this determination in Alfred H. H. that collateral consequences don't apply. Obviously, the Supreme Court disagrees with both of us. It suggests that it does apply, and it has suggested a couple of legal reasons as to why. But that doesn't suggest that in this instance any of those potential consequences would or could apply. And I think that's what is required of the respondent. If you're going to raise an exception to the mootness doctrine, I think it's incumbent upon you to prove that you are entitled to that exception. You are the mooting party, and I don't believe that there's any negative stigmatism that attaches to this type of determination, that it all is similar to a criminal conviction. Criminal convictions is one example where the Supreme Court suggested that collateral consequences would be inferred. So I think that inference cannot be made in these cases, and the defendant ought to be required to prove it. In the end, what we're faced with is simply a question of fact. Did the State prove compliance with the mental health statute by factually proving specific allegations of competency? And I think that's the main gist of the defendant's argument, is that the State's case is lacking in merit because they haven't satisfied our burden of proof on issues of competency and danger to themselves or to others. And clearly we would argue the contrary. We think the record contains more than sufficient information that the psychiatrist who treated this respondent understood the respondent was attempting to self-diagnose himself from suffering with adult attention deficit disorder. The psychiatrist suggested that that was not an appropriate diagnosis in her opinion, that the medication suggested by the respondent himself that he should receive would be inappropriate for his current condition because he was in a manic state. Manic state was only relevant because in that state she couldn't diagnose whether or not he actually did suffer from ADHD. But regardless of whether the guy suffered from attention deficit disorder or not, she clearly believed that he was suffering from a mental illness that required a totally different medication, that the stimulant that he wanted for the ADHD would be counterintuitive, counterproductive to what he was suffering with. So, you know, it's a classic burden of proof. Who are you going to believe? The defendant, or respondent rather, did suggest that he had taken medication for attention deficit disorder in the past, but he never suggested a doctor prescribed such medication. And the record did not suggest that either. The records of McFarland didn't suggest that this man had ever been diagnosed by any physician as suffering with that condition or received treatment for it. And the respondent himself testified that in the past when taking medication for attention deficit disorder, he acted bizarrely. I think something about knocking over tombstones in a cemetery. So there's more than sufficient evidence in the record to support the state's conclusion that this gentleman suffered from a mental condition and he required medication and lacked capacity to understand his illness and the reasons why the medication should be given. But more importantly, this issue is moot. It does not satisfy any of the exceptions to the mootness doctrine, and this Court should dismiss it as moot and require defendants or respondents in the future, if they want to raise collateral consequences, to prove the existence of it. If there are no further questions, thank you, Your Honor. Thank you. Rebuttal, please. Ms. Tracy, you have no dispute about the standard review, should we get to the merits being against the manifest way of the evidence? I do not. I would just like to point out that every mental health petition that's filed is a new case, regardless of some counties, especially in Sangamon, in fact, every petition does get a different court number. So I think that's significant when you think about this whole mootness argument, and also of all the thousand plus petitions that are filed here in Sangamon County, I think that's really self-evident how each case is individually significant. And also, I think these issues need to be reviewed within the framework of, in the Mental Health Code, as far as I know, the only proceedings in which the burden of proof on any issue actually shifts to the respondent is when he petitions for discharge. And then there's a special statutory provision that requires that the former respondent, now petitioner petitioning for discharge, has to make a prima facie case, so that's an initial burden of proof on his part, before the burden then shifts to the state for the rest of the case to decide whether indeed he should be discharged. There's no requirement for any reference to any part of that long statute shifting the burden of proof to the respondent on any issue. I again point out that Suzette D., which I cited in my brief, specifically defines same action as being subjected to a proceeding in which either the same provision or similar orders are at issue, and goes beyond that to more or less presume that in every proceeding the facts will be different, which I don't know how it could be otherwise. As far as collateral consequences go to where I think maybe one confusing thought in this case is that of emergency medications, which the patient can be forced in that instant, but that I don't think is what Alfred H. H. is talking about. I think what that case is talking about is forced medication orders, and keep in mind that Alfred H. H. had many appeals, some successful, some not, and also he was a convicted felon. Also, there may be many collateral consequences that are not ever of record that this court or any court would ever know about, and one of those would be the right to bear arms, another constitutional protection, which would be lost to these respondents who find themselves in mental health facilities. On those bases, then, he again respectfully asked this court to find exceptions to mootness, to rule on the merits, and to reverse the track court meds order. Thank you.